# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIELLE BARRON, individually, and as Parent and Legal Guardian of E.B., a minor child,<br><br>                 Plaintiff,<br><br>v.<br><br>NATIONAL HEALTH INSURANCE COMPANY,<br><br>                 Defendant. | Case No: 5:19-cv-591 SLP |

## PLAINTIFF'S RESPONSE AND OBJECTION TO DEFENDANT NATIONAL HEALTH INSURANCE COMPANY'S MOTION TO EXCLUDE EXPERT TESTIMONY OF REBECCA FREEMAN UNDER <u>DAUBERT</u>

### MANSELL ENGEL & COLE

Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
Zachary K. Housel, OBA #32802
204 North Robinson Avenue, 21st Floor
Oklahoma City, OK 73102
T: (405) 232-4100 ** F: (405) 232-4140
E-mail:  mengel@meclaw.net

**ATTORNEYS FOR PLAINTIFF –DANIELLE BARRON, individually, and as Parent and Legal Guardian of E.B., a minor child**

Date:  November 6, 2020

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT AND AUTHORITY .................................................................................. 5

    I.      MS. FREEMAN IS QUALIFIED TO
             RENDER EXPERT TESTIMONY .................................................. 5

    II.     MS. FREEMAN'S TESTIMONY WOULD ASSIST THE JURY ............ 11

    III.    NHIC'S OTHER COMPLAINTS ARE MISPLACED ............................. 13

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases:**

*Alexander v. Smith & Nephew, P.L.C.*,
98 F.Supp. 2d 1310, 1316 (N.D. Okla. 2000) ................................................................ 8

*Ancho v. Pentek Corp.*,
157 F.3d 512, 518 (7th Cir. 1998) ................................................................................. 8

*Arbol Media, Inc. v. Hartford Casualty Ins. Co.*,
2003 WL 25669170, p. *2 (C.D. Cal. 2003) ............................................................... 16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ........................................................................ 6, 7, 8, 11, 14

*Ford v. Allied Mut. Ins. Co.*,
72 F.3d 836, 841 (10th Cir. 1996) .............................................................................. 12

*Goebel v. Denver and Rio Grande Western Railroad Co.*, 215 F.3d 1083, 1088 (10th Cir.
2000), *appeal after remand*, 346 F.3d 987 (10th Cir. 2003) ......................................... 8

*Heffron v. District Court of Oklahoma County*,
77 P.3d 1069, 1077 (Okla. 2003) .............................................................................. 12

*Hulmes v. Honda Motor Co. Ltd.*,
960 F.Supp. 844, 865 (D. N.J. 1997), *aff'd*, 141 F.3d 1154 (3rd. Cir. 1998) .............. 8

*Karns v. Emerson Elec. Co.*,
817 F.2d 1452, 1459 (10th Cir. 1987) ....................................................................... 16

*Klinger v. State Farm Mut. Auto. Ins. Co.*,
115 F.3d 230 (3rd Cir. 1997) ................................................................................... 16

*Kumho Tire Co., Ltd. v. Carmichael*,
119 S.Ct. 1167, 1175 (1999) ............................................................................... 6, 7, 8

*Magallan v. Zurich Am. Ins. Co.*,
2017 WL 4012964 at *10 (N.D. Okla. Sept. 12, 2017) .................................. 12, 14, 16

*Metzger v. Am. Fid. Assur. Co.*,
2008 WL 7180759, at *3 (W.D. Okla. Jan. 28, 2008 ................................................ 15

*Morgan v. Unum Life Ins. Co. of Am.*,
2012 WL 3156569 at *3 (D. Utah Aug. 3, 2012) ...................................................... 12

*Nelson v. Granite State Ins. Co.*,
  2010 WL 9532571, at *2 (W.D. Okla. Jan. 14, 2010) ................................ 9, 10, 11, 15

*Peckham v. Cont'l Cas. Ins.Co.*,
  895 F.2d 830, 837 (5th Cir. 1990) ................................................................................ 11

*Peters v. American Income Life Insurance Company*,
  2003 OK CIV APP 62, ¶ 33, 77 P.3d 1090 ................................................................. 12

*Ruiz-Troche v. Pepsi Cola*,
  161 F.3d 77, 85 (1st Cir. 1998) ...................................................................................... 9

*Seikel v. Am. Med. Sec. Life Ins. Co.*,
  2007 WL 4864462, at *3 (W.D. Okla. May 11, 2007) ................................................. 15

*Smith v. Ingersoll-Rand Co.*,
  214 F.3d 1235, 1244 (10th Cir. 2000)............................................................................. 8

*Specht v. Jensen*,
  853 F.2d 805, 809 (10th Cir.1988), cert. den., 488 U.S. 1008 (1989)........................ 10

*Transcon. Ins. Co. v. Lemons*,
  2007 WL 4856868, *3 and fn. 3 (W.D. Okla. Apr. 24, 2007).............................. 10, 11

*United States v. Hankey*,
  203 F.3d 1160, 1168 (9th Cir. 2000).............................................................................. 6

*Werth v. Makita Elec. Works, Ltd.*,
  950 F.2d 643, 648 (10th Cir. 1991)............................................................................... 11

*Wheeler v. John Deere Co.*,
  935 F.2d 1090, 1100-1101 (10th Cir. 1991) ................................................................ 16

## Other Authorities:

Fed. R. Civ. P. 26(a) (2)(B)(v) ........................................................................................ 13

Fed. R. Evid. 702 ...........................................................................................7, 8, 9, 10, 11, 12

Fed. R. Evid. 704(a).......................................................................................................... 16

Plaintiff, Danielle Barron ("Ms. Barron"), individually and as Parent and Legal Guardian of E.B., a minor child, respectfully submits the following arguments and authorities in Response and Objection to the Motion to Exclude Expert Testimony of Rebecca Freeman under Daubert filed herein by Defendant National Health Insurance Company ("NHIC").  For the reasons which follow, Ms. Barron respectfully submits that NHIC's *Daubert* Motion should be denied.

## **INTRODUCTION**

E.B. was a state champion gymnast and traveled for national competitions with an award-winning cheerleading team.  She was an exceptional athlete practicing and performing almost daily up until her injury on November 5, 2018, when she injured her hip while completing an aerial flip during cheerleading practice.  She had not had these hip difficulties prior to her injury.  She experienced continuing and progressively worsening difficulties with her hip through November and December until the doctors eventually conducted an MRI on December 27, 2018.  The MRI demonstrated a definitive tear of her hip labrum and associated osteonecrosis with some flattening changes in the femoral head due to temporary interruption or reduction of normal blood supply to the hip, which required surgery to repair.  The type of avascular necrosis present in E.B.'s hip following her torn labrum is referred to as Perthes disease when it is present in a child.  However, there is absolutely no evidence that would indicate that E.B. suffered compromised blood flow at her femoral head in her hip prior to her tearing her hip labrum on November 5, 2018.

At the time of the accident at issue E.B. was insured by a health insurance policy issued by Defendant NHIC.  Ms. Barron sought and obtained precertification for the surgery E.B. required in January 2019.  E.B. had the medically necessary surgery in February 2019.  Ms. Barron was then notified that E.B.'s surgery was not covered because it was excluded under the policy by exclusion #59 (the so-called "joint exclusion").  This exclusion does not apply to treatment related to an injury.  The evidence indicates that NHIC denied this health insurance claim asserting this exclusion without ever considering whether or not the surgery was "related to a covered injury," as required in the exclusion. Indeed, NHIC denied the principal hospital charges of $81,961.75 without ever having received <u>any</u> of the medical records that had been ordered in connection with E.B.'s health insurance claims.  When NHIC did receive the appropriate medical records in connection with E.B.'s surgery, they established that the policy's preexisting condition exclusion had no application to this claim (because E.B. had never had these problems with her hip before) and the records documented that her problems were attributed to her cheerleading injury on November 5, 2018.

Ms. Barron spent hours on the telephone on a half dozen different occasions explaining that the surgery resulted from the injury in November and that the medical records and doctors had confirmed the same.  Ms. Barron's list of exclusions was by bullet points, without any numbers, and she could not even determine what exclusion "#59" meant.  Multiple representatives told Ms. Barron that they could not identify what exclusion #59 was, they refused to let her talk to their supervisors, one representative told her it was being excluded for kidney and renal failure (which E.B. never had), and one

representative told her it should be paid if it is an injury, but then said something to the effect that "there are just so many exclusions under these policies."

As NHIC's Motion for Summary Judgment [Doc. No. 47] now admits, E.B.'s hip injury was not a preexisting condition per their evaluation of her medical records, admits that exclusion #59 is <u>automatically</u> applied, without any proper consideration of whether or not the surgery was related to an injury, and further admits that the surgery was preapproved with a finding of medical necessity and was otherwise covered by the insurance policy.  In order to rely upon exclusion #59, NHIC, of course, bears the burden of proving that its alleged exclusion applies because E.B.'s surgery was <u>not</u> related to the covered injury.  *E.g., Pitman v. Blue Cross & Blue Shield of Oklahoma*, 217 F.3d 1291, 1298 (10th Cir. 2000) ("A basic rule of insurance law provides that the insured has the burden of showing that a covered loss has occurred, while the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy.").  NHIC does not, and cannot, meet this burden.  In this instance, NHIC cannot even demonstrate that it ever even considered, properly investigated, evaluated or determined at all whether or not the surgery was related to her injury.  There is certainly no evidence that this child suffered from any compromised blood flow to her femoral head in her hip prior to tearing the labrum in her hip that is associated with such blood flow.  Plaintiff's difficulty is that all of the insurance-knowledgeable witnesses work for the Defendant.  Plaintiff must have one witness that understands insurance-technical nuances and how the industry operates to handle insurance claims.  Otherwise, the Defendant can describe how it is supposed to be handled in any manner they choose.

Ms. Barron has hired to Rebecca Freeman to present expert testimony herein.  Ms. Freeman has been adjusting and handling insurance claims, including medical and health claims, for twenty-seven (27) years.  She is a Fellow, Life Management Insurance (FLMI) as well as a Fellow, Life and Insurance Health claims (FLHC), both of which are advanced insurance industry designations for those in the insurance field.[1]  She is also a Lean Six Sigma Black Belt, which, in the insurance context, directly relates to the efficient and appropriate processing of insurance claims.  Contrary to NHIC's claim, as noted in her report, Ms. Freeman reviewed Ms. Barron's complaint (petition), the plan benefit schedule, the Bradley Boyles deposition transcript, the Third Party Administrator (Meritain's) internal claim guidelines (BATES M00001-M05566), all Explanation of Benefits documents, all written communications, all recorded phone calls, all National General Health Insurance exhibits, disclosures and phone calls (NHIC 00001-000278), medical history and medical records.  Freeman Report, p. 1 (Ex. 1 of Defendant's Motion to Exclude [Doc. No. 51]).  Because NHIC failed and refused to produce its own internal claim file until just very recently,[2] Ms. Freeman was unable review that documentation.

---

[1] The FLMI is a ten (10) course professional development program that focuses on insurance industry specific education in the insurance and finance industries.  The FLHC, which is awarded only after successful completion of the Associate Life and Insurance Health Claims (ALHC) is awarded after a claims agent embarks upon a course of study, followed by successful passage of related exams.  It is designed to provide a claim agent with a thorough understanding of how insurance claim administration works in relation to group and individual coverages.

[2] In fact, Defendant indicated that they could not obtain claim documentation from their own TPA, Meritain and resisted a formal Motion to Compel claiming the claim file documentation was not accessible to them.  Then, the TPA, Meritain would not respond to an out-of-state subpoena, finally produced some scattered documents and continued to hide

As she further noted in her report Ms. Freeman additionally reviewed various legal matters, including statutes; regulations; insurance company guidelines; claim file documentation and retention requirements; textbooks; publications; court cases; model unfair claims settlement practices acts; company advertisement promising prompt and fair claims processing; insurance claim procedures; and guidelines contained in contracts with third party administrators. *Id.*

Ms. Freeman has extensive experience in health insurance matters, understands the duties imposed upon insurers with regard to investigating, evaluating and paying covered claims of an insured. She can explain, among other things, why it was unreasonable for NHIC to summarily deny the claims related to E.B.'s surgery without even obtaining the relevant records. Courts have consistently recognized the technical nature of insurance that requires insurance professional knowledge. For the reasons which follow, Ms. Barron respectfully submits that Rebecca Freeman's testimony is admissible as an aid to the jury in understanding what occurred in this case, and that NHIC's motion to exclude her testimony should therefore be denied.

## ARGUMENT AND AUTHORITY

## I.   MS. FREEMAN IS QUALIFIED TO RENDER EXPERT TESTIMONY

With respect to Ms. Freeman's qualifications, the evidence will be that Ms. Freeman has over twenty-five (25) years of experience in insurance claims, both individually and in management roles. That includes examining claims on all levels of complexity, setting

---

the claim file notes until a witness was compelled and identified the documents.

policy and procedure, reviewing applicable legislation, ensuring compliance, communicating with customers, sales agents, insurance commissioners and regulators, collaborating with attorneys, and managing claims teams. She has also served on internal review panels for over fifteen (15) years (Freeman Report, Ex. 1 of Defendant's Motion at p. 1, [Doc. No. 51]).

Ms. Freeman is a claims consultant with Thrivent, the largest fraternal insurance and financial organization in the United States. *Id.* She works with complex disability income, long-term care, and Medicare Supplement claims. *Id.* She also owns her own business, Expert Consulting Services, LLC, which includes consulting on disability income, long-term care, Medicate Supplement, major medical and auto insurance cases in litigation. *Id.*

Despite NHIC's seeming assertion to the contrary, the Court's "gatekeeping function" does not require that the testimony of a witnesses who, while lacking a degree in science or engineering, nonetheless possess specialized, relevant knowledge, be excluded. *Kumho Tire Co., Ltd. v. Carmichael*, 119 S.Ct. 1167, 1175 (1999). Indeed, the Court in *Kumho Tire* specifically observed that in some cases, "the relevant reliability concerns may focus upon personal knowledge or experience" and that the factors articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) "do not constitute a 'definitive checklist or test.'" *Id.* In that regard, "in considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 is generally construed liberally." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000), *cert. den.*, 530 U.S. 1268 (2000) (no error in admitting testimony of police gang expert that defendants were in affiliated gangs,

that "code of silence" prohibited testifying against affiliated gang member, and that violation of code would result in member being beaten up or killed) (internal citation omitted).  As discussed above, Ms. Freeman has the requisite specialized knowledge and experience.

The Advisory Committee Notes to the 2000 amendments to Fed. R. Evid. 702 are to the same effect.  As they state, "[n]othing in this amendment is intended to suggest that experience alone – or experience in conjunction with other knowledge, skill, training or education – may not provide a sufficient foundation for expert testimony.  To the contrary, the test of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.  In certain fields, **experience is the predominant, if not sole, basis for a great deal of reliable expert testimony**."  *Id.* (citations omitted; emphasis added).  Ms. Barron respectfully submits that the area of insurance claim handling is one such area.

If the witness is relying solely or primarily on experience, the witness "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *Id.* However, as stated in the Advisory Committee Notes to Fed. R. Evid 702, as amended after *Daubert* and *Kumho*:

> A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.  *Daubert* did not work a "seachange over federal evidence law," and "the trial court's rule as gatekeeper is not intended to serve as a replacement for the adversary system."  *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1196).  As the Court in *Daubert* stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  509 U.S. at 595.  Likewise, this amendment is not

intended to provide an excuse for an automatic challenge to the testimony of every expert. [*Id.*].[3]

When faced with a challenge to the admissibility of expert testimony, "the district court need not 'recite the *Daubert* standard as though it were some magical incantation,' *Ancho v. Pentek Corp.*, 157 F.3d 512, 518 (7th Cir. 1998), or apply all of the reliability factors suggested in *Daubert* and *Kumho*." *Goebel v. Denver and Rio Grande Western Railroad Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000), *appeal after remand*, 346 F.3d 987 (10th Cir. 2003).  Rather, "the gatekeeper inquiry under Rule 702 is ultimately a flexible determination." *Id.* (citing *Kumho*, 117 S.Ct. at 1175).  Indeed, *Kumho* itself specifically notes that the reliability factors set forth in *Daubert* "may or may not be pertinent" to the particular expertise at issue.  117 S.Ct. at 1175.  Moreover, in determining the reliability of proffered expert testimony, "firsthand knowledge is not requisite to the admissibility of an expert opinion."  *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1244 (10th Cir. 2000).  The Court does not focus on an expert's conclusions, but on whether his principles and methodology are sound.  *Alexander v. Smith & Nephew, P.L.C.*, 98 F.Supp. 2d 1310, 1316 (N.D. Okla. 2000).  As the Advisory Committee Notes to the 2000 amendments to Fed. R. Evid. 702 state, "proponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to

---

[3]*See also*, *Hulmes v. Honda Motor Co. Ltd.*, 960 F.Supp. 844, 865 (D. N.J. 1997), *aff'd*, 141 F.3d 1154 (3rd. Cir. 1998), *cert. den.*, 525 U.S. 814 (1998) (burden of proving by preponderance of the evidence that expert testimony is reliable, and thus admissible under *Daubert* standard is not meant to be an onerous one; rather, *Daubert* requires district court to determine whether novel or untested methodologies are sufficiently reliable that conclusions based upon them can be of some use to the jury).

demonstrate by a preponderance of the evidence that their opinions are reliable .... The evidentiary requirement of reliability is lower than the merits standard of correctness.'" (citing *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d. Cir. 1994)).  "The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other."  *Id.  See also*, *Ruiz-Troche v. Pepsi Cola,* 161 F.3d 77, 85 (1ˢᵗ Cir. 1998) ("*Daubert* neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance").

With respect to the reliability of Ms. Freeman's opinions the issue is whether her opinions are based upon "sufficient facts or data" and are "the product of reliable principles and methods." Fed. R. Evid. 702(b), (c).  As part of the reliability inquiry under Federal Rule of Evidence 702, the Court must determine whether the witness is qualified to testify as an expert.  For an expert to be qualified, it must be shown that the expert possesses "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth."  *Nelson v. Granite State Ins. Co.*, 2010 WL 9532571, at *2 (W.D. Okla. Jan. 14, 2010) (citing and quoting *Lifewise Master Funding v. Telebank,* 374 F.3d 917, 928 (10th Cir.1998)).  The Tenth Circuit has held that this standard should be construed and applied liberally. *Id.*, (citing  *United States v. Gomez,* 67 F.3d 1515, 1526 (10th Cir.1995)).  Expertise in a specialized area directly related to the issue in question is generally not required, however, as long as the expert "stays within the reasonable confines of his subject area.  *Nelson*, 2010 WL 9532571 at 2 (internal quotation omitted).  In general, "a lack of

9

specialization does not affect the admissibility of [the expert] opinion, but only its weight." *Id.  See also Transcon. Ins. Co. v. Lemons*, 2007 WL 4856868, *3 and fn. 3 (W.D. Okla. Apr. 24, 2007) (permitting expert testimony on insurance issues, noting that "even without the benefit of the transcripts of some of Transcontinental representatives' depositions or medical and economic evidence, Dawson had sufficient data to analyze").

In this case, Ms. Freeman will be asked to explain the insurance industry's claim handling standards and how they apply to the handling of Ms. Barron's claim.  The methodology she used to arrive at her opinions and reach her conclusions is precisely that used by NHIC's claims handlers– her review of the policy-related documentation in NHIC's claim file (to the extent it has been produced), her training and knowledge of insurance customs and practices, and her twenty-five years of experience examining in claims on all levels of complexity, setting policy and procedure, reviewing applicable legislation, ensuring compliance, communicating with customers, sales agents, insurance commissioners and regulators, collaborating with attorneys, and managing claims teams. However, unlike NHIC's personnel, Ms. Freeman also reviewed E.B.'s medical records in the course of determining whether she believed that that this was a covered claim or not. She will explain the appropriate claim handling standards applicable to policies such as that at issue, taking into consideration the ODI regulations and the Oklahoma Statutes pertaining to such policies.[4]  It is critical that Plaintiff have one non-adverse witness

---

[4] An expert may not state legal conclusions drawn by applying the law to the facts. *United States v. Jensen,* 608 F.2d 1349, 1356 (10th Cir.1979); *Frase v. Henry,* 444 F.2d 1228, 1231 (10th Cir.1971). An expert may, however, refer to the law in expressing his or her

knowledgeable on claims handling.  It would be critically unfair if only the Defendant's witnesses could intelligently address insurance.

Ms. Freeman's long period of employment as a claims person handling health-related claims makes her uniquely qualified to discuss and explain the insurance industry standard and practice for investigating and evaluating such insurance claims.  She has either personally handled or supervised the handling of thousands of claims in insurance-related matters.  Ms. Freeman had ample "facts and data" upon which to reach reliable opinions and used a reliable methodology – the same ones which were available to be used by NHIC's personnel – to reach them.  At best, NHIC's criticisms go to the weight to be given her testimony, not its admissibility.  *Lemons*, 2007 WL 4856868, at *3; *Nelson*, 2010 WL 9532571, at *2.  NHIC's motion to exclude her testimony should therefore be denied.

## II.    MS. FREEMAN'S TESTIMONY WOULD ASSIST THE JURY

Under Fed. R. Evid. 702, the use of expert testimony is appropriate if it "will assist the trier of fact to understand the evidence or to determine a fact in issue...."  That requirement is primarily one of relevance.  *Daubert*, 509 U.S. at 591.  As the Tenth Circuit has noted, "the 'touchstone' of admissibility is helpfulness to the trier of fact."  *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991).

As the Court recognized in *Peckham v. Cont'l Cas. Ins.Co.,* 895 F.2d 830, 837 (5th Cir. 1990) "[i]nsurance is a complicated subject in the industry and, over time, has developed a patina of custom and usage.  Arcana abound.  Defendant's proffered experts

_____

opinion.  *Specht v. Jensen, 853 F.2d 805, 809 (10th Cir.1988)*, *cert. den.*, 488 U.S. 1008 (1989).

11

could reasonably be expected to shed some light in a shadowy domain." *See also Ford v. Allied Mut. Ins. Co.*, 72 F.3d 836, 841 (10th Cir. 1996) (allowing expert testimony in a bad faith case on bad faith issues, industry standards, and for purpose of demonstrating that the insurer's conduct was in accord with "industry practice"); *Magallan v. Zurich Am. Ins. Co.*, 2017 WL 4012964 at *10 (N.D. Okla. Sept. 12, 2017) (allowing expert testimony notwithstanding expert's failure to identify specific source of her industry standards where she had extensive experience in the insurance industry relevant to offering an opinion as to proper claims handling procedures); *Morgan v. Unum Life Ins. Co. of Am.*, 2012 WL 3156569 at *3 (D. Utah Aug. 3, 2012) (unpublished op.) (expert's extensive experience with claims handling qualified her to testify with respect to industry standards for investigation and evaluation of disability claims); *Peters v. American Income Life Insurance Company,* 2003 OK CIV APP 62, ¶ 33, 77 P.3d 1090 (the inner workings and procedures of an insurance company, or lack thereof, are not matters generally known to the average person); *Heffron v. District Court of Oklahoma County*, 77 P.3d 1069, 1077 (Okla. 2003) (stating that "expert testimony on the adequacy or inadequacy of the carrier's pre-denial investigation may be relied on by both sides to support their respective positions in the case).

Not even NHIC can seriously argue that jurors are so familiar with health insurance claim handling standards and practices that expert testimony on the issue would not be helpful to them.  Under Fed. R. Evid. 702, helpful expert testimony is admissible, subject to the other conditions set forth in the rule, which are met here.

Moreover, contrary to NHIC's assertion, Ms. Freeman does not intend to testify as to conclusions of law.  What she proposes to testify about are insurance standards, customs and practices derived from her years of experience and training, her education, case law, statutes, rules and regulations, particularly as they relate to the events that occurred in this case.  That is the type of information that literally <u>every</u> claims handler learns, takes continuing education courses to keep up with, and uses to adjust insurance claims across every line of insurance coverage.  Indeed, that is part of properly handling an insurance claim, including the one here at issue.

Finally, NHIC's claim adjusters (actually Meritain's claim adjusters, whose acts NHIC is responsible for) purport know the proper way to investigate and evaluate a first party health insurance claim and will presumably present such testimony.  It is only fair that Ms. Barron should be able to present a person knowledgeable about this subject that is not adverse.  Otherwise, Ms. Barron is forced to try and extract from adverse witnesses the applicable standards.  For these reasons, Ms. Barron respectfully submits that Ms. Freeman's testimony should be admitted as an aid to the jury in the trial of this case.

## III.   NHIC'S OTHER COMPLAINTS ARE MISPLACED

NHIC's other complaints are also misplaced.  For example, it complains that Ms. Freeman did not provide a list of the other cases in which she has testified by deposition or at trial within the past four (4) years.  *See* Fed. R. Civ. P. 26(a) (2)(B)(v).  The short answer to this complaint is that Ms. Freeman has not testified by way of deposition or trial within the preceding four (4) years, either for her employer or for her own consulting firm.  *See*

Affidavit of Rebecca Freeman, attached as Ex. 1.  Consequently, there are no applicable cases to identify.

NHIC also complains about allegedly "inaccurate medical factual, and legal statements conclusions based on her review of the file."  *See* Defendant's Daubert Motion [Doc. No. 50] at p.5.  One example given is based on her allegedly "inaccurate" statement regarding the contents of the 12/27/2018 medical records.  That complaint is hugely ironic given that NHIC did not obtain <u>any</u> of E.B.'s medical records, including the one about which it now complains, before it denied this claim.  Moreover, any alleged inaccuracies in that regard can be inquired into on cross-examination.  *E.g., Daubert v. Merrell Dow Pharm, Inc*., 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").[5]  Again, NHIC's complaints about Ms. Freeman's allegedly inaccurate statements in her report, which appear to be few in number, go to the weight of her testimony, not its admissibility.  *E.g.*, *Magallan,* 2017 WL 4012964, at *10 ("The Court finds that Luther may testify about Zurich's claims handling practices based on her training and experience, and that Zurich's

---

[5] The same is true with respect to the "data" that Ms. Freeman allegedly did not identify. In that regard, as noted in Ms. Freeman's affidavit, she is primarily relying on her years of experience as an insurance claim handler.  *See* Freeman affidavit, Ex. 1.  *See also*, *Magallan v. Zurich Am. Ins. Co.*, 2017 WL 4012964 at *10 (N.D. Okla. Sept. 12, 2017) (allowing expert testimony notwithstanding expert's failure to identify specific source of her industry standards where she had extensive experience in the insurance industry relevant to offering an opinion as to proper claims handling procedures).  that regard, Ms. Barron notes that NHIC has not yet deposed Ms. Freeman and thus still has the opportunity to inquire about some of the matters of which it complains herein.

arguments concerning the industry standards relied upon by Luther go to the weight, rather than the admissibility, of Luther's testimony…. Zurich may cross-examine Luther about the specific sources or publications stating the relevant industry standards, because this goes to the weight of her testimony. However, this is not a reason to wholly exclude Luther's testimony.").

NHIC has also asserted in a broad-brush type of argument that Ms. Freeman's opinions should be excluded because she allegedly does not have experience with "short term medical policies." However, NHIC has not identified even one claims handling standard relating to "short term medical policies" that substantially differs from those relating to any other type of health insurance policy insofar as this claim is concerned, nor has it identified even one "Oklahoma" claims handling standard that is so far different from those utilized by Ms. Freeman in her day to day business of handling claims that it would somehow make her testimony inadmissible. *See, e.g.*, *Seikel v. Am. Med. Sec. Life Ins. Co.*, 2007 WL 4864462, at *3 (W.D. Okla. May 11, 2007) ("Plaintiffs also challenge Randall's qualifications because she has not previously offered an expert opinion regarding Oklahoma's law of bad faith. Plaintiffs offer no authority to support the contention that, to be qualified as an expert, a witness must have previous experience with the law of a specific state."). Moreover, even if some such standard did exist, that would again go to the weight to be given her testimony, not its admissibility. *E.g., Nelson*, 2010 WL 9532571 at 2 (noting that in general, "a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight."). *See also Metzger v. Am. Fid. Assur. Co.*, 2008 WL 7180759, at *3 (W.D. Okla. Jan. 28, 2008 ("The Court concludes Gelona possesses such

skill, experience or knowledge in the insurance field to allow his opinion to rest on substantial foundation, and testimony of this nature would aid the trier of fact in the search for truth…. Gelona's insurance industry experience, while insubstantial as to supplemental cancer insurance benefits, is within the reasonable confines of the insurance industry…. [A]ny lack of specialization Gelona may have in the area of supplemental cancer insurance benefits goes to the weight of the expert opinion and not its admissibility."); *Magallan*, 2017 WL 4012964 at *10.

NHIC finally argues that Ms. Freeman should not be allowed to say that NHIC's actions constitute "bad faith," were "unfair," or use similar adjectives. Fed. R. Evid. 704(a) provides in pertinent part that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Case law from the Tenth Circuit is in accord. *See*, *e.g.*, *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1459 (10th Cir. 1987) (in product liability action, court did not abuse its discretion by allowing expert witness to testify that product at issue was "unreasonably dangerous beyond the expectation of the average user" and that defendant acted "recklessly" in producing and distributing it); *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100-1101 (10th Cir. 1991) (in products liability action, court did not abuse its discretion by allowing expert testimony that product at issue was more dangerous than anticipated by ordinary consumers). *See also*, *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230 (3rd Cir. 1997) (affirming bad faith verdict against defendant insurer, noting in part that "plaintiff's expert testified that State Farm acted recklessly and unreasonably"); *Arbol Media, Inc. v. Hartford Casualty Ins. Co.*, 2003 WL 25669170, p. *2 (C.D. Cal.

2003) (denying motion in limine seeking to exclude testimony of plaintiff's expert, finding that the expert was "both qualified and competent to testify as to the reasonableness of Hartford's handling of the insurance claim at issue.").

## **CONCLUSION**

At this point, it is not exactly clear what NHIC is attempting to exclude other than Ms. Freeman's conclusion regarding "bad faith," but if that is all, this portion of NHIC's motion is moot because Ms. Barron's counsel does not anticipate eliciting testimony that NHIC's actions constituted "bad faith."  This ultimate question is for the jury.  However, counsel does anticipate eliciting testimony that NHIC's actions were unreasonable, along with testimony discussing the reasons why.  Ms. Barron respectfully requests that the Court reserve ruling on this part of NHIC's Motion until the Court sees the context in which any such testimony is proffered in order to make a more informed evaluation of the issue.

WHEREFORE, Plaintiff Danielle Barron, individually and as Parent and Legal Guardian of E.B., a minor child, respectfully requests that the Daubert Motion filed herein by Defendant NHIC be denied for the reasons set forth above.

Respectfully submitted,

s/Mark A. Engel
Mark A. Engel, OBA #10796
Kenneth G. Cole, OBA #11792
Zachary K. Housel, OBA #32802
**MANSELL ENGEL & COLE**
204 North Robinson Avenue, 21st Floor
Oklahoma City, OK 73102-7001
T: (405) 232-4100 ** F: (405) 232-4140
E-mail:  mengel@meclaw.net

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2020, I filed the attached document with the Clerk of Court.  Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

s/Mark A. Engel